# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ACTION INDUSTRIES, INC.

                                 **CIVIL ACTION**

**VERSUS**

                                 **NO. 19-43-JWD-RLB**

**ALLEGHENY CASUALTY COMPANY,
ET AL.**

## RULING AND ORDER

Pending before the Court are the Motion for More Definite Statement (Doc. 2) filed by Defendant Allegheny Casualty Company ("Allegheny"), and the Motion to Dismiss Without Prejudice; Alternatively, Motion to Stay (Doc. 3) filed by Defendant Universal Industrial Gases, Inc. ("Universal"). Plaintiff Action Industries, Inc. ("Action") has opposed both motions. (Docs. 8 & 12). Allegheny has filed a reply brief in support of its motion. (Doc. 13). Oral argument is not necessary. After careful consideration of the parties' arguments, the facts alleged, and the applicable law, and for the following reasons, Universal's motion (Doc. 3) is granted in part, Allegheny's motion (Doc. 2) is denied as moot, and this matter is stayed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2018, Action filed suit in the 19th Judicial District Court, East Baton Rouge, Louisiana, against Allegheny, Universal, and Surety Bond Brokers of Louisiana, Inc. ("Surety Bond Brokers"). (Doc. 1-2). Allegheny removed the case to this Court on January 23, 2019, on the basis of diversity jurisdiction. (Doc. 1).

Action alleges that on August 28, 2017, it entered into a contract with Universal to "demo[lish], dismantle and re-install an existing [Air Separation Unit] Liquefier Plant located in Westlake, LA to Warner Robins, GA," in addition to transporting the necessary equipment, piping,

and materials to the Warner Robins site. (Doc. 1-2 at 2). Action asserts that it completed 100 percent "of the scope of work" at the Westlake, Louisiana site "without complaint." (*Id.*). Subsequently, as of June 22, 2018, Action had completed 100 percent of the work at the Warner Robins site and had "received approval of substantially complete work from [Universal] in accordance with Article 9, subsection 9.8.2. [of the contract]." (*Id.*).

On September 12, 2017, Allegheny issued to Universal a performance bond regarding the contract at issue. (Doc. 1-2 at 2; *see also* Doc. 1-2 at 43). The performance bond included purchase orders in the amounts of $1,711,780 and $1,407,913 for a total of $3,119,693. (Doc. 1-2 at 2; Doc. 1-2 at 46–47). The bond was to be "extinguished when the scope of work [was] complete[.]" (*Id.*). Universal admitted "in its own emails" that Action completed the work under the contract and "that it never intended for any additional work to be bonded as no change orders were issued." (*Id.* at 3). Because it performed its obligations under the contract, Action seeks a judgment from this Court declaring that Action and Allegheny be "released of any obligations" under the performance bond. (*Id.*).

On October 18, 2018, two months before Action filed suit in Louisiana, Universal filed suit against Action and Allegheny in the Superior Court of Houston County, Georgia. (Doc. 3-3). Universal's complaint in that suit cites the same contract and performance bond. (*Id.* at 1–2). In the Georgia suit, Universal alleges that, pursuant to the performance bond agreement, Allegheny agreed to guaranty Action's performance of the contract "according to its terms, plans, and specifications," and promised to pay Universal for "Action's failure to so perform," and all "damages caused by such a failure, in a sum not exceeding $3,119,693." (*Id.* at 3). Action soon "fell behind" on its performance of the contract "and ultimately defaulted on its obligations." (*Id.*). Universal alleges that Action failed to complete the full scope of work under the contract, failed

to perform the work timely and correctly, submitted false timesheets and invoices, and failed to pay its subcontractors. (*Id.* at 3–4).

Due to Action's alleged failure to perform its obligations, Universal withheld payment and "was forced to retain others to complete the work." (Doc. 3-3 at 4). On June 22, 2018, Universal informed Action that it was in default and "Action was removed and terminated under the Contract." (*Id.*). On July 16, 2018, counsel for Universal provided notice to Allegheny "of its obligation to complete the Project under the Bond." (*Id.* at 5). Allegheny failed to take any action. (*Id.*). "Therefore, [Universal] was forced to provide all labor and materials necessary to complete the Project, which construction is nearly complete at the present time." (*Id.*). Universal sued Action and Allegheny for breach of contract, demanding judgment in the amount of "at least $1,170.306.00," plus costs of court and attorney's fees. (*Id.* at 6–10).

Now, Universal asks the Court to abstain from exercising jurisdiction over this suit and to either dismiss the case without prejudice or enter a stay. (*See generally* Doc. 3-2). Allegheny, meanwhile, has filed a Motion for More Definite Statement "on the grounds that Action's Petition for Declaratory Judgment is so vague and ambiguous that Allegheny cannot reasonably prepare a response." (Doc. 2-1 at 1). And Action has filed a motion to remand, asserting that Surety Bond Brokers is a citizen of Louisiana and, accordingly, the Court lacks diversity jurisdiction. (Doc. 9). The Court denied the motion and dismissed Surety Bond Brokers from this lawsuit without prejudice on the basis of improper joinder. (Doc. 19 at 10).

## II. DISCUSSION

### A. General Standards

Under the Federal Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a).

However, courts are not required to exercise this jurisdiction. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (stating that "the Declaratory Judgment Act is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant") (internal quotation marks omitted); *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 96 (5th Cir. 1992) ("According to *Brillhart*, the district court has discretion whether to decide a declaratory judgment action."). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 289. "The basic question for the district court is 'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in state court.'" *Am. Emp'rs Ins. Co. v. Eagle, Inc.*, 122 F. App'x 700, 702 (5th Cir. 2004) (quoting *Brillhart*, 316 U.S. at 495).

"Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. "[I]nterference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* Where a "federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390–91 (5th Cir. 2003). Moreover, federal courts "should avoid duplicative or piecemeal litigation where possible." *Id.* at 391. Duplicative litigation raises "federalism or comity concerns because of the potential for inconsistent state and federal court judgments, especially in cases involving state court issues." *Id.*

**B.** *Trejo* **Factors**

The Fifth Circuit applies the following seven nonexclusive factors, derived from the Supreme Court's decision in *Brillhart*, to determine whether to abstain from jurisdiction in a declaratory judgment action:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated,
> 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant,
> 3) whether the plaintiff engaged in forum shopping in bringing the suit,
> 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist,
> 5) whether the federal court is a convenient forum for the parties and witnesses, …
> 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, and …
> [(7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994) (citation and internal quotation marks omitted). These factors "address three broad considerations—federalism, fairness/improper forum shopping, and efficiency." *Eagle Inc.*, 122 F. App'x at 703; *see also Sherwin-Williams*, 343 F.3d at 390–91 (explaining that "each circuit's formulation" of the factors set forth in *Brillhart* address "the same three aspects of the analysis"). The Court will address each *Trejo* factor in turn.

**1.    Pending Related State-Court Action**

In October 2018, two months before Action this suit, Universal filed suit in a Georgia court against Action and Allegheny. (*See* Doc. 3-1 at 1 & Doc. 3-3). Universal sued both Action and Allegheny for breach of contract, alleging that Action failed to perform its obligations under the contract and Allegheny failed as surety to either "complete the Project or pay the costs of the same." (Doc. 3-3 at 6–7). Universal thus sought a judgment in its favor in the amount of $1,170,306. (*Id.* at 10). Universal's allegations in the Georgia suit center on the same project at issue in the instant case—the contract to "demolish, dismantle, relocate, and re-install an existing

Air Separation Unit Liquefier Plant originally located in Westlake, LA and relocate it to Warner Robins, GA." (*Id.* at 2). Universal's suit contains no allegations or claims that do not arise out of the very contract at issue in the instant case. Accordingly, because the Georgia suit arises out of the exact same set of facts as this case—and Universal seeks a judgment in that case declaring Action in breach of the contract Allegheny in breach of the surety agreement—all of the matters in controversy in the this case may be litigated in the Georgia suit.

In briefing, Action provides no compelling argument to the contrary. Instead, Action offers argument regarding the merits of its claims, expanding on the factual allegations in its state-court petition, as well as a declaration that the lawsuit in this Court was "the only way for Action to protect its interests." (Doc. 12 at 5). Even if this statement is true, it does nothing to demonstrate that the matters litigated in the Georgia suit are distinct in any way from those that would be litigated here should the Court ultimately enter the declaratory judgment Action seeks. Indeed, the same arguments and claims Action advances in this lawsuit can just as easily be asserted as affirmative defenses and counterclaims in the Georgia suit.

The central question raised by the first *Trejo* factor, described by the Fifth Circuit as a "threshold issue," is "whether the controversy is better decided in state or federal court," *Sherwin-Williams*, 343 F.3d at 392, as *Brillhart* counsels that a parallel state case presenting "the same issues, not governed by federal law, between the same parties" weighs in favor of abstaining from the federal declaratory action. *Brillhart*, 316 U.S. at 495. Accordingly, the first factor weighs heavily in favor of granting Universal's requested stay.

### 2. Anticipatory Nature of the Present Suit

Action filed this suit two months after Universal filed suit against Action in Georgia; thus, Action did not file suit in anticipation of future litigation. However, it is clear from the timing and

the allegations in both cases that Action filed this suit in *response* to the Georgia suit.  Under the more stringent *Colorado River* abstention doctrine,[1] the Supreme Court has observed that "the vexatious or reactive nature" of a suit "may influence the decision whether to defer to a parallel state litigation." *Allen v. La. State Bd. of Dentistry*, 834 F.2d 100, 105 (5th Cir. 1988) (internal quotation marks omitted).  Because Action seeks to litigate the same issues involved in the Georgia suit—essentially employing this lawsuit as an affirmative defense to that case—the Court concludes that, even if not rising to the level of "vexatious," this lawsuit is a clear response to the suit filed against Action in Georgia.  Thus, this factor weighs in favor of granting a stay.

### 3. Forum Shopping

Universal argues that Action engaged in forum-shopping by filing this suit because of a desire to litigate the dispute in Louisiana, its home state.  Specifically, Universal contends that Action was "perhaps displeased with either the Georgia court or the judge assigned to the parallel case in that court, or perhaps thinking that its local attorney has more personal influence with the judges in the 19th Judicial District Court[.]" (Doc. 3-2 at 7).  Universal also asserts that Action filed suit against Surety Bond Brokers to defeat diversity jurisdiction and "get [the case] in the Baton Rouge court system." (*Id.*; *see also* Doc. 1-3 at 1–2).  Attached to Allegheny's Notice of Removal is an affidavit by Surety Bond Broker's Director and President stating that, when asked why Action was suing Surety Bond Brokers, counsel for Action stated that Action did not "want any harm to come to [Surety Bond Brokers], we only want to get [the lawsuit] in the Baton Rouge court system." (Doc. 1-3 at 2).

---

[1] The *Colorado River* abstention doctrine provides that "[a] court may abstain from a case that is part of parallel, duplicative litigation typically only under 'exceptional' circumstances." *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). "[C]ourts have held that the *Colorado River* standard applies whenever an action includes both declaratory and non-frivolous coercive forms of relief." *New England Ins. Co. v. Barnett*, 561 F.3d 392, 395 (5th Cir. 2009).  Here, Action requests only declaratory relief; therefore, *Brillhart* and not *Colorado River* controls.

Based on the timing of this lawsuit, the joinder of a nondiverse defendant, and the fact that it arises out of the same set of facts as the Georgia suit, the Court concludes that forum-shopping appears to be a factor in Action's decision to bring suit in Louisiana state court. While the Court stops short of engaging in speculation regarding the reasoning and motives behind Action's actions, Action's decision to file suit in Louisiana just two months after Universal filed suit in Georgia raises, at a minimum, the strong possibility that Action filed suit in Louisiana seeking a more favorable forum. Therefore, the forum-shopping factor weighs in favor of a stay.

### 4.     Inequities

Proceeding with Action's declaratory-judgment suit before the conclusion of any proceedings in the Georgia suit would result in inequity because it would essentially give Action a second, alternative chance to litigate the same issues involved in that case in a different forum. In other words, Action is "using the declaratory judgment process to gain access" to a different forum on potentially "improper or unfair grounds." *Sherwin-Williams*, 343 F.3d at 391. Action has pointed to no proper or legitimate reason for filing suit in Louisiana, like "use of the Declaratory Judgment Act to resolve issues . . . in one, rather than multiple, forums." *Id.* at 399 (internal quotation marks omitted). Rather, the timing of Action's filing in Louisiana suggests it could be "engaged in a race to *res judicata*." *Id.* (internal quotation marks omitted). And if Action were concerned about its status as an out-of-state defendant in the Georgia suit, a "traditional justification for diversity jurisdiction," *id.*, it could have removed that case to federal court. Thus, the Court concludes that if it were to proceed hearing Action's suit, it would perpetuate "the inequity of permitting [Action] to gain precedence in [potentially] time and forum by its conduct." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983).

### 5. Forum Convenience

Universal argues that because the work under the contract was to be completed in Georgia, and most of its damages "occurred in Georgia, where it had to employ others to finish the work abandoned by Action," the state court in Georgia is the "more convenient and economical forum for the parties and witnesses involved[.]" (Doc. 3-2 at 8). Action does not argue otherwise. (*See generally* Doc. 12). While the record before the Court provides scant guidance on this factor, the Court concludes based on the nature of the allegations and the arguments of the parties that the state court in Georgia is likely the more convenient forum for this lawsuit. However, the weight and significance of this factor is mitigated by the lack of submission by either party demonstrating the convenience (or lack thereof) of either forum.

### 6. Judicial Economy

Judicial economy is clearly hampered by simultaneous lawsuits involving the same parties and encompassing identical issues, particularly in light of the fact that this case was filed just two months after the Georgia suit. Allowing proceedings in this case to continue while the Georgia suit is still pending would not "serve the purposes of judicial economy" because it would clearly risk "duplicative or piecemeal litigation" and inconsistent judgments, and would unnecessarily waste judicial resources. *Sherwin-Williams*, 343 F.3d at 391. Accordingly, the judicial economy factor weighs strongly in favor of entering a stay.

### 7. State Decree

Because there is no existing state decree of which the Court has been made aware, this factor is not relevant to the analysis.

After application of the *Brillhart* factors, it is exceedingly clear that a stay is appropriate. The pending suit in Georgia involves the same parties and exact same issues as the instant suit and

is not governed by federal law. *See Brillhart*, 316 U.S. at 495; *Sherwin-Williams*, 343 F.3d at 390–91. Thus, this case is the very definition of "duplicative." *Sherwin-Williams*, 343 F.3d at 391. Because it would be both inefficient and inconsistent with the principles of federalism and comity to risk "inconsistent state and federal court judgments," *id.*, proceedings in this suit cannot proceed until a resolution of the Georgia case.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss Without Prejudice; Alternatively, Motion to Stay (Doc. 3) is **GRANTED IN PART**, and this lawsuit is **STAYED** pending the resolution of proceedings in *Universal Industrial Gases, Inc. v. Action Industries Inc. and Allegheny Casualty Company*, Civil Action No. 2018V119143 in the Superior Court of Houston County, Georgia. **IT IS FURTHER ORDERED** that the Motion for More Definite Statement (Doc. 2) filed by Defendant Allegheny Casualty Company is **DENIED AS MOOT** with leave to refile.

Signed in Baton Rouge, Louisiana, on <u>August 7, 2019</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**